## FIELD *a.* HOLBROOK.

*New York Superior Court; Special Term, October,* 1856.

### FOREIGN SUIT.—INJUNCTION.

A court of this State having general equitable jurisdiction, has power to enjoin a party to a suit pending before it, from suing the adverse party upon the same subject matter, in a foreign tribunal.

Where a suit is brought between parties who reside in this State,—upon a contract to be performed within the State,—and such suit is one effectual in its structure to determine the whole controversy,—and the defendant threatens a suit against the plaintiff, founded upon the same controversy, in a foreign court,—an injunction may be granted to restrain him from bringing it.

Motion for an injunction.

This action was brought by Cyrus W. Field against Darius B. Holbrook, A. Holbrook, Peter Cooper, Moses Taylor, Marshall O. Roberts, and Chandler White. The facts upon which the present motion was based, are fully stated in the opinion.

*David Dudley Field,* for the motion.

*Charles A. Peabody,* opposed.

HOFFMAN, J.—The present motion involves a question of much importance, and one, as I believe, never decided in our State. Cases like Ward *v.* Arredondo (*Hopk. R.*) may be supposed to govern it, but perhaps they are distinguishable. At any rate I do not know that in the form presented, the question has been settled in any of our superior tribunals. What is said by Chancellor Walworth in Mead *v.* Merritt (2 *Paige,* 404) will be afterwards noticed.

That question is, whether this court may enjoin a party to a suit pending before it, from suing the plaintiff in a foreign tribunal; and if so, under what circumstances.

The case is presented upon a motion for an injunction upon the complaint alone.

The complaint states that on March 24, 1854, the plaintiff, with Chandler White, acting on behalf of themselves and the other associates, Cooper, Taylor and Roberts, entered into an agreement with one Ambrose Shea, as agent of Darius B. Holbrook, and of the firm of Holbrook & Co., consisting of said Darius B. Holbrook, and of A. Holbrook. That agreement is averred to be contained in a letter annexed to the complaint, which as as follows.

*" St. John's, March* 24, 1854.

" AMBROSE SHEA, ESQ.,

" Dear sir :—In compliance with the verbal understanding had with you, we state, that we have agreed with you as agent of Messrs. Holbrook & Co. and of D. B. Holbrook, to give them respectively stock, at par, in the New York, Newfoundland & London Telegraph Company, for the actual amount of money paid by them (and interest at seven per cent.) for the Newfoundland Electric Telegraph Company, and actually received by that Company ; such stock to be given to them on their demanding it of us in New York, at any time in the month of August next, and on their surrendering to us all the bonds and stock received by them from said Newfoundland Electric Telegraph Company.

" Your ob't serv'ts,

" CHANDLER WHITE,

" CYRUS W. FIELD,

*" On behalf of the Associates."*

" I accept the above terms on account of Messrs. Holbrook & Co. and D. B. Hollbrook.

*" S. John's, Newfoundland, March* 31, 1854.

" A. SHEA."

The complaint then states, that the said Holbrook afterwards caused to be delivered to the plaintiff and his associates an account of the said money alleged to have been paid by him, amounting, according to such account, to $51,823 80.

That on August 29, 1854, the plaintiff and his associates caused to be tendered on their behalf to the said Holbrook

five hundred and eighteen shares of the capital stock of the New York, Newfoundland & London Telegraph Company; the par value of each share, being one hundred dollars, together with twenty-three dollars and fifty cents; and demanded of him the bonds and stock aforesaid, but the said Holbrook did not receive such shares or money, or deliver up the said bonds and stock.

That the said Darius B. Holbrook and A. Holbrook had not, nor had either of them during the said month of August, nor at any time since, the bonds and stock of the Newfoundland Electric Telegraph Company aforesaid, or the larger part thereof. That notwithstanding such tender, and the inability of the Holbrooks to comply with the terms of the agreement, the said Darius B. Holbrook insists upon his pretended demands, and threatens to bring suits against the plaintiff and his associates, and against the Company in this country, and in Newfoundland.

That the plaintiff has not been able to obtain the assent of his associates to join as plaintiffs, and therefore makes them defendants. That he and they are all stockholders in the said New York, Newfoundland & London Telegraph Company.

The plaintiff asks that the agreement may be given up to be cancelled; and that in the mean time the said Darius B. and A. Holbrook be enjoined from commencing or prosecuting any action against the plaintiff or his associates or such Company, upon such agreement, or any action arising out of the same.

It is conceded that the plaintiff and the defendants reside in New York. The contract, although dated at St. Johns, is to be performed in New York. The contract relates to the stock of a company apparently as much a company of New York, as of Newfoundland or London.

The plaintiff insists, that by his tender and the inability and refusal of the defendants to fulfil, he is discharged from the contract, and that it ought to be cancelled. As his associates do not unite in seeking this remedy, it may be that he cannot have such surrender; but he may, if successful, have a judgment rescinding it so far as concerns himself.

It is obvious that the whole litigation can be, properly and

justly to all parties, carried on in this court. If testimony is needed from abroad the usual course is open.

The earliest case generally cited on this subject is Lowe *v.* Baker, before Lord Clarendon in 1692. He refused an injunction to restrain a party from proceeding in a suit at Leghorn. The report is found in *Freeman's Reports*, 2, in 1 *Chancery Cases*, 67, and in *Nelson's Reports*, 103. In Hovenden's edition of Freeman it is stated from the Register's Book, that the Lord Chancellor had consulted with several of the judges. In Nelson's Reports it is stated that all the Barons were of a different opinion from the Lord Chancellor, and the Bar was dissatisfied with the decision.

Without referring to the intermediate cases, which bear but slightly upon the question, I proceed to notice those commencing in 1821, in which it has been fully considered.

In Harrison *v.* Gurney (2 *Jac. & Walker*, 562), a decree for the execution of certain trusts was made in a creditor's suit, and a receiver appointed. Some of the estates were situated in Ireland. The trustees had subsequently filed a bill in Ireland, for the same object. An order was made restraining their proceeding in that suit. The Lord Chancellor said, they might call the receiver to an account; but in other respects the second bill was unnecessary.

Bushley *v.* Munday and others, (5 *Madd. R.*, 297,) is a leading case. The bill was to set aside a bond given by the plaintiff to Munday as trustee for the others, in part satisfaction of money lost at play. A motion was made that an injunction before granted should be extended to prevent Cloves, the assignee of the bond and a defendant, from proceeding with a suit upon it in the Court of Sessions in Scotland. It was stated that the Scotch Court had jurisdiction of the suit first, which from the case submitted to Mr. Cranstoun appears to have been the fact, by about two months. The Vice Chancellor observed that the object of the two suits was the same; but the court here could give a relief by cancelling the bond, which the court there could not do. It was more convenient also for this court to say whether by the law of England the bond could be recovered upon, and the plaintiff here could have the

benefit of the admission of the assignor under oath in his answer. Injunction granted.

In Beckford *a.* Kemble, 1822, (1 *Sim. & St.*, 7), after a decree for a redemption in England, the defendants instituted a suit in Jamaica to foreclose the mortgage, and were restrained upon certain terms. All the parties resided in England, but the lands were in Jamaica.

Lord Portarlington *v.* Soulby, came before Lord Brougham in 1834, (3 *Myl. & K.*, 104). He adverted to Lowe *v.* Baker, and thought the answer given to Lord Clarendon was a sound answer,—viz., that the order affected the parties only. He noticed some later cases, especially Campbell *v.* Houlditch, 1820. He sustained an injunction restraining the defendants from proceeding with a suit in Ireland on a bill of exchange given as alleged for a gambling debt. I gather from the case that the transaction took place in England. The case of Penn *v.* Lord Baltimore and cases of that character were also adverted to, as tending to the result he had arrived at. That leading authority was the one on which Ward *v.* Arrendondo, in our own court, proceeded.

The late case of The Carron Iron Co. *v.* McClaren, (5 *Clarke's Cases, H. of Lords, July*, 1855), contains a full discussion of the subject. It arose upon an appeal from an order continuing an injunction. (16 *Beav.* 279, 289).

A suit in Chancery in England was instituted in March, 1852, to carry the trusts of a will into execution. In May, 1852, a decree for an account, &c., was made. The plaintiffs were a company located in Scotland with agencies in England. The testator was one of their agents, and was alleged to be largely indebted to them. In October, 1852, the Company commenced a suit in the sessions in Scotland against the executors. They obtained an inhibition and arrestment. In December, 1852, an injunction to restrain proceedings in Scotland was continued; (16 *Beav.*, 279, 289), and from this an appeal was taken.

The Lord Chancellor said :—When, pending a litigation here, in which complete relief may be had, a party to the suit institutes proceedings abroad, the court in general consider this as a vexatious harassing of the opposite party, and restrains the

foreign proceedings.   Harrison *v.* Gurney, (2 *Jac. & W.,* 503, and Reckford *v.* Kemble, (*Sim. &. St.,* 7), are then cited, with the observation that decrees had been first obtained in those cases.   He proceeds :—" Even if no decree had been obtained in this country, yet if a suit instituted abroad appears ill calculated to answer the ends of justice, the court has restrained the foreign action, imposing terms considered reasonable to protect the party.   (Cites Bushley *v.* Munday, 5 *Madd.,* 297).

"But even when there is no question as to the foreign litigation being or not being necessary, or being or not likely to be as effectual as litigation in this country, still if a person within the jurisdiction of this court is instituting proceedings in a foreign court contrary to equity and good conscience, the court will restrain the prosecution of such foreign suit, just as if it had been a suit in this country.   But the court will not interfere if from any cause it appears likely to be more conducive to justice, that the foreign proceedings should be left to take their course.   Lord Eldon in Kennedy *v.* Casselis, (3 *Swainston,* 313), and Lord Lyndhurst in Jones *v.* Geddes, (1 *Phillips,* 724), acted on the same principle.

"These are instances in which this court has interfered on principles of convenience to prevent litigation, which it has considered to be either unnecessary and therefore vexatious, or else ill adapted to secure complete justice."

He then states the rule as equally clear that the court had no right to interfere with a foreign creditor resident abroad, suing in the courts of his own country, even after a decree for administration of assets here; and proceeds to discuss and decide the point, that the Carron Iron Company were in fact residents of Scotland, within that rule; that the fact of their owning property in England and selling their articles chiefly there, and having agencies there established, was not enough, and the service on the agent was not sufficient.   On this ground the injunction was dissolved.   Lord St. Leonards however dissented as to this point, and of course gave his authority in substance to the other positions of the Lord Chancellor, as did also Lord Brougham.   Lord St. Leonards enters into a very careful consideration of the authorities.   He fully approves of Bushley *v.* Munday.

In Mead *v.* Merritt, (2 *Paige R.*, 404), Chancellor Walworth stated—That where a party was within the jurisdiction of the court, so that on a bill properly filed here, this court has jurisdiction of his person,* although the subject matter of the suit may be situated elsewhere, it may, by ordinary process of injunction, compel him to desist from commencing a suit at law, either in this State or in any foreign jurisdiction. The Court of Chancery in England has even gone so far as to restrain the defendant from proceeding in a suit previously commenced in a Court of Session in Scotland. But this court will not sustain an injunction bill to restrain a suit or proceeding previously commenced in a court of a sister State, or in the Federal courts.

·· I think the present case is within the principle of the cases I have cited. The contract is to be executed here. The parties reside here. A suit is commenced in this court, effectual in its structure to determine the whole controversy, and the defendant threatens another suit, at a distance, and inevitably attended with vexation and embarrassment to the plaintiff and other parties.

Order for the injunction accordingly.

---

### FULLER *a.* LEWIS.

*Supreme Court; First District; Special Term, October,* 1856.

ACTION FOR POSSESSION OF PERSONAL PROPERTY.—DEMAND.—
ASSIGNEE.

In an action to recover possession of personal property, where the property which is the subject of the action came to the possession of the defendant by delivery from the wrong-doer, and defendant *merely detains* it,—it is necessary for plaintiff to allege that defendant has refused to deliver it up, *upon a demand.*

This is so where the defendant holds as assignee for the benefit of creditors, from the wrong-doer.

Demurrer to complaint.

---

* See Ante, 20, and note.